Herbert F. Bagley, Appellant, *v.* Commonwealth of Pennsylvania, State Horse Racing Commission, Appellee.

Argued September 6, 1974, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., ROGERS and BLATT. Judge MENCER did not participate.

*Randall C. Rolfe,* with her *Richard E. McDevitt* and *Montgomery, McCracken, Walker & Rhoads,* for appellant.

*James F. Cendoma,* General Counsel, with him *Robert J. Dixon,* Deputy Attorney General, for appellee.

OPINION BY JUDGE WILKINSON, October 10, 1974:

This case is an appeal from a decision of the Pennsylvania State Horse Racing Commission (Commission) permanently revoking appellant's license to train horses in Pennsylvania. The Commission found that appellant had violated Rule A-18(1)[1] and Rule 29.09(a)[2] of the Rules of Racing promulgated by the Commission.

---

[1] Section of Rule A-18 reads in pertinent part as follows:

"No horse shall be admitted to any part of the plant or premises of any pari-mutuel racing plant under the jurisdiction of the Pennsylvania State Horse Racing Commission unless a Health Certificate (Appendix 3) is presented when admission to the premises is sought. The Certificate must state the following regarding the health and physical condition of the horse:

"(a) The horse was examined thoroughly within a seven-day period preceding the date admission is sought.

"(b) The horse was free of any evidence of infectious, contagious or transmissible disease and was afebrile at the time of the examination. . . ."

[2] Rule 29.09 reads in pertinent part as follows:

"A Trainer shall not enter or start a horse that: "(a) Is not in serviceable, sound racing condition. . . ."

The relevant facts are not in dispute. In May, 1973, appellant took charge of the training of a horse named "Bettalot" in Illinois. Appellant knew that the horse had had a positive result on the Coggins test, a laboratory test developed to test for an infectious disease known as equine infectious anemia (E.I.A.). Appellant claims that the owner of the horse told appellant that Bettalot had been cleared of the disease. The horse was then shipped to Kentucky and then on June 3, 1973, to the Penn National Racetrack in Pennsylvania, along with five other horses. All six horses arrived at Penn National without the health certificates required by Rule A-18(1). Appellant testified that the shipper who delivered the horses to Penn National told appellant that the six health certificates had been lost during the trip. Appellant offered no evidence to substantiate this, and offered no evidence that a health certificate had in fact ever been issued by Kentucky.

Immediately upon the arrival of the horses at Penn National, appellant had them examined by Dr. Stuber, the track veterinarian, who then issued a health certificate for Bettalot. Appellant did not inform Dr. Stuber of the prior positive test for E.I.A.

Appellant entered Bettalot in races on June 30, July 9, and July 21, 1973. Prior to each race, as was customary, she was examined for soundness and racing condition by Dr. Stuber. Bettalot won the July 9 race.

On July 24, 1974, the Department of Agriculture quarantined Bettalot due to the previous positive test for E.I.A. in Illinois. A subsequent Coggins test again showed positive for E.I.A. On September 6, 1974, the Commission suspended appellant's license pending a hearing for violating Rule A-18(1) and Rule 29.09, and on November 8, 1973, following a hearing, the Commission permanently revoked appellant's license.

The basis for the Commission's action was appellant's withholding the knowledge of the positive E.I.A.

test from Dr. Stuber. The Commission found that there was a duty on appellant to inform Dr. Stuber of this fact. We disagree. The Rules of Racing set forth no such duty. Furthermore, Pennsylvania does not require a Coggins test as a prerequisite to obtaining a health certificate, although many other states do.

When Bettalot first arrived at Penn National, she was issued a health certificate after being examined by Dr. Stuber. Section 2 of Rule A-18 provides: "Section 2. Any horse not having the Required Health Certificate will be unloaded in a quarantine area to be designated by the licensee. A Health Certificate meeting the requirements of this Rule must be obtained within 24 hours from the time of admission, or the horse must be removed from the premises. A veterinarian will be available on the premises or on call for the purposes of examining the horse and issuing the certificate. If a horse, upon examination, is found to have clinical evidence of infectious, contagious or transmissible disease, he shall be promptly removed from the premises and the stall in which he had been stabled and the area immediately surrounding it should be sprayed with a disinfectant, as prescribed by the Commission's Veterinarian."

Dr. Stuber testified that Bettalot did not show any of the standard symptoms or any clinical evidence of E.I.A. at any of the times he examined her. In fact, he found her to be high-spirited and in sound racing condition at all times. While it is agreed that the type of examination permitted by Rule A-18(2) is not such as would necessarily reveal evidence of E.I.A., this apparent defect is not the fault of appellant. The record indicates clearly that appellant complied with Rule A-18. As a matter of law, the Commission cannot find that appellant violated Section 1 of that Rule when he did comply with Section 2, which is all he is required to do under that Rule.

The Commission also found that appellant violated Rule 29.09 by entering a horse that was not in serviceable, sound racing condition. Our scope of review in this appeal is prescribed by Section 44 of the Administrative Agency Law, Act of June 4, 1945, P. L. 1388, *as amended*, 71 P.S. §1710.44. We must affirm the Commission unless any finding of fact necessary to support its adjudication is not supported by substantial evidence. *See Johnson v. State Horse Racing Commission*, 5 Pa. Commonwealth Ct. 458, 290 A. 2d 277 (1972). We find that there is not substantial evidence in the record to support a finding of a violation of Rule 29.09. The appellant testified that he had been told by the owner that Bettalot had been cleared of E.I.A. Furthermore, Dr. Stuber, the Commission's witness, stated that at no time did the horse exhibit the high temperature, low blood count, or dull and listless behavior usually associated with a horse infected with E.I.A., and that on each examination, he found Bettalot to be in serviceable, sound racing condition.

The circumstances surrounding this case are exceedingly suspicious and the actions attributed to appellant by the Commission should not be condoned to any extent. However, the record in this case cannot sustain a finding that a violation of the Commission's Rules, as they presently exist, has been committed. The Commission has not met its burden of proof. Therefore, we must reverse. If it is desirable that the Rules require a trainer to reveal all known medical history to the track veterinarian when requesting an examination under Section 2 of Rule A-18, then the Rules should be amended to provide for it.

Accordingly, we enter the following

## ORDER

Now, October 10, 1974, the decision of the Pennsylvania State Horse Racing Commission, dated Novem-

ber 8, 1973, ordering the revocation of Trainer's License No. 2384 PN issued to Herbert F. Bagley and further ordering that no horse owned or trained by Herbert F. Bagley be allowed to enter upon any racing grounds within this jurisdiction unless the same be first transferred to another proper person or persons with the approval of the Board of Stewards, is reversed and said license is hereby reinstated.

President Judge BOWMAN dissents.